In the Matter of the Claim of WILLIAM BUCKLEY, Respondent, BETHLEHEM STEEL CORPORATION, Appellant. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent.

Third Department, January 13, 1972.

*Phillips, Lytle, Hitchcock, Blaine & Huber* (*Francis V. Cole* and *John F. Donovan* of counsel), for appellant.

*Lipsitz, Green, Fahringer, Roll, Schuller & James* (*Richard Lipsitz* of counsel), for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*Samuel A. Hirshowitz, Murray Sylvester* and *Irving Jorrisch* of counsel), for Industrial Commissioner, respondent.

*Per Curiam.* The claimants involved in this lead case were all union members employed by the employer and no controversy existed between them. Upon the employer's premises there were certain plumbing contractors performing construction services for the employer and because of a controversy between those contractors and their employees and/or a union representing such employees picket lines were established at the appellant's premises. The labor controversy did not involve the appellant or any employees of the appellant. However, certain of the appellant's employees as are represented by the claimants in this case refused to cross the picket lines and thus became unemployed for the period of time that the picket lines were maintained. It appears that other employees of the appellant did cross the picket lines and did continue their employment despite such picket lines. The record establishes that the employer had ample work available for the claimants.

The employer objected to the granting of benefits to the claimants represented herein because there was work available and the claimants arbitrarily refused to cross the picket lines and/or because the unemployment resulted from an industrial controversy in the employer's establishment (Labor Law, § 592, subd. 1). The Referee's decision which was adopted by the board held that as a matter of law union employees are not to be disqualified from benefits because they voluntarily refuse to cross a picket line in situations where there is no industrial controversy within their establishment.

Upon the facts of this case, the board's finding that the claimants' unemployment was not due to an industrial controversy in their establishment must be affirmed. (See *Matter of Freeman* [*Catherwood*], 9 A D 2d 1008; *Matter of Bucklaew* [*Corsi*], 277 App. Div. 805; *Matter of Wittlaufer* [*Corsi*], 277 App. Div. 805.)

The question then is—was there " good cause " for the claimants' voluntary separation pursuant to subdivision 1 of section 593 of the Labor Law?

In the present case the record establishes that there was work for these claimants available at their work site and, further, that they had no particular reason for not crossing the picket line except by virtue of the fact that it was a picket line. The board, relying upon *Wittlaufer (supra)* found that the claimants had the right to refuse to cross picket lines without fear of disqualification from benefits. This broad rule, which would apparently be applicable to any picket line notwithstanding the relationship of the picketers, to the party or parties picketed, was attributed to this court's decisions in *Bucklaew, Wittlaufer* and *Freeman.*

These cases do not stand for such a proposition. Indeed, none of these cases even reached the question of " good cause ". While *Bucklaew* did include language to the effect that the claimants' refusal to cross the picket line therein was due to fear for his personal safety, that case, as well as *Wittlaufer* and *Freeman* merely decided that there were no industrial controversies in those establishments, and did not go into " good cause ". In any event, *Bucklaew* would be distinguishable from the instant case on the question of " good cause " because of the fear involved there.

In *Wittlaufer* and *Freeman* the court found no need to go into the question of " good cause " since it apparently concluded that neither case involved a voluntary separation. In both cases the court expressly recognized that the claimants reported to their respective employers' establishments (the picket lines in both instances being at job sites elsewhere) willing to work, that the employer had other work available (outside the picket lines) which could have been assigned to the claimants, and that in each case the employer chose not to give the claimant the available work. It should be noted that in *Bucklaew* where the court did mention the claimants' fear (apparently in reference to " good cause ") there was no finding, as in *Wittlaufer* and *Freeman,* that the employer had other work available. It seems clear then, that the reference to the claimants' willingness to do other available work was, in each case, equivalent to a finding that their separations were nonvoluntary.

While the existence of " good cause " is usually a question of fact for the board (*Matter of Roth [Catherwood],* 34 A D 2d 1081; *Matter of Slattery [Catherwood],* 34 A D 2d 1060; *Matter of Rubenstein [Catherwood],* 33 A D 2d 950), the board's finding

in the instant case must be reversed. To find good cause on these facts would be error as a matter of law. Such a finding would establish a policy whereby the mere presence of a picket line, no matter how unrelated, would be " good cause " for a work stoppage under the Unemployment Insurance Law (Labor Law, art. 18). Such a policy would run contrary to the specified intent of article 18. Section 501 sets forth the public policy underlying the article " as a guide to [its] interpretation and application ": " Economic insecurity due to unemployment is a serious menace to the health, welfare, and morale of the people of this state. *Involuntary unemployment* is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden * * * [T]he legislature therefore declares that * * * the public good and the well-being of the wage earners of this state require * * * the compulsory setting aside of financial reserves for the benefit of persons unemployed *through no fault of their own."* Employees who voluntarily refuse to cross peaceful picket lines which are totally unrelated to themselves or their employer are not involuntarily unemployed. Since they are unemployed through their own fault, they are not entitled to benefits under article 18. While the same voluntariness may be imputed to employees who refuse to work because of a labor dispute or controversy *in their establishment* (i.e., aimed at or involving their employer), those employees have been statutorily excepted from the requirement that " good cause " be shown under subdivision 1 of section 593 and paragraph (b) of subdivision 2 of section 593. The Legislature's inclusion of that exception clearly indicates that a voluntary refusal to work because of a labor dispute or controversy *outside* of " the establishment " is not with " good cause ", but must be justified as any other voluntary separation.

The decisions should be reversed and the matters remitted to the Unemployment Insurance Appeal Board, with costs to appellant against the respondent Industrial Commissioner.

HERLIHY, P. J., REYNOLDS, GREENBLOTT, SWEENEY and SIMONS, JJ., concur.

Decisions reversed and matters remitted to the Unemployment Insurance Appeal Board, with costs to appellant against the respondent Industrial Commissioner.